IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

JERRY L. VOSS,

   Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

   Defendant.

No. C11-0074

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  A. Voss' Education and Employment Background . . . . . . . . . 4
  B. Administrative Hearing Testimony . . . . . . . . . . . . . . . . . 5
    1. Voss' Testimony . . . . . . . . . . . . . . . . . . . . . . . . 5
    2. Julie Voss' Testimony . . . . . . . . . . . . . . . . . . . . 6
    3. Vocational Expert's Testimony . . . . . . . . . . . . . . . 6
  C. Voss' Medical History . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
  A. ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . 14
  B. Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . 16
    1. Dr. Momany's Opinions . . . . . . . . . . . . . . . . . . . 16
    2. Hypothetical Question . . . . . . . . . . . . . . . . . . . . 20
  C. Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the court on the Complaint (docket number 1) filed by Plaintiff Jerry Voss on July 11, 2011, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Voss asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Voss requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On October 17, 2008, Voss applied for disability insurance benefits. In his application, Voss alleged an inability to work since September 2, 2006 due to low back pain, a ruptured disc, back surgery, and severe depression. Voss' application was denied on January 5, 2009. On February 25, 2009, his application was denied on reconsideration. On April 23, 2009, Voss requested an administrative hearing before an Administrative Law Judge. On March 11, 2010, Voss appeared via video conference with his attorney before ALJ Denzel R. Busick for an administrative hearing. Voss, Voss' wife, Julie Voss, and vocational expert Vanessa May testified at the hearing. In a decision dated April 2, 2010, the ALJ denied Voss' claim. The ALJ determined that Voss was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Voss appealed the ALJ's decision. On May 10, 2011, the Appeals Council denied Voss' request for review. Consequently, the ALJ's April 2, 2010 decision was adopted as the Commissioner's final decision.

On July 11, 2011, Voss filed this action for judicial review. The Commissioner filed an Answer on October 28, 2011. On November 30, 2011, Voss filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On January 27, 2012, the Commissioner filed a responsive brief

arguing that the ALJ's decision was correct and asking the court to affirm the ALJ's decision. On February 7, 2012, Voss filed a reply brief. On August 31, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that

decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Voss' Education and Employment Background

Voss was born in 1964. He is a high school graduate. At the administrative hearing, Voss testified that prior to his alleged disability onset date, he worked primarily as both a commercial and residential painter for many years.

The record contains a detailed earnings report for Voss. The report covers the time period of 1979 to 2008. Voss had minimal earning (less than $3,800 per year) from 1979 to 1983. From 1984 to 1995, Voss earned between $8,418.71 (1984) and $18,614.75 (1999). In 1996, he earned $7,070.25. From 1997 to 2005, he earned between $33,020.28 (1998) and $25,006.25 (1999). He earned $8,114.00 in 2006. He had no earnings in 2007 and 2008.

### B. *Administrative Hearing Testimony*

### 1. *Voss' Testimony*

At the administrative hearing, Voss' attorney asked Voss why he stopped working in 2006. Voss stated that he stopped working due to back pain. Specifically, Voss testified that "I just couldn't function anymore. I was in pain all the time."[1] Voss rated the pain level in his back as an 8 on a scale on 1 to 10, with 10 being the most severe. According to Voss, repeated reaching in all directions also caused him pain. Voss indicated that he could stand and move about for approximately 5 to 10 minutes before needing to sit down.

Voss' attorney also asked Voss to discuss his difficulties with depression:

> Q:   Let's talk about your depression. What kinds of problems are you having there?
>
> A:   Just poor concentration.
>
> Q:   Okay, and what do you believe? I mean other than that, what do you believe are the depressive symptoms that you're having?
>
> A:   Down all the time. My mood.
>
> Q:   Your moods?
>
> A:   Don't ever feel like doing much of anything[.] . . .

(Administrative Record at 42.)

---

[1] Administrative Record at 40.

### 2.   *Julie Voss' Testimony*

Voss' wife, Julie Voss ("Julie"), also testified at the administrative hearing. Voss' attorney asked Julie if Voss' back pain is as severe as alleged and whether the pain has changed in the past few years. Julie responded:

> I can tell when he's in a lot of pain because he just goes from the couch to the recliner. Sometimes he stays in bed till noon. . . . I think [his pain level is] staying the same. When he has epidurals, it does seem like he's a little bit better, but he's not – it doesn't last long.

(Administrative Record at 49). Next, Voss' attorney asked Julie to describe Voss' depressive symptoms. Julie responded, "No motivation. Down and out. Won't talk to me, just real quiet."[2] Lastly, Julie testified that as a result of her husband's physical and mental conditions, their social life has deteriorated.

### 3.   *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> could work at a light level, pick up 20 pounds occasionally, 10 pounds frequently. Six-six hours stand and walk combined, six hours. No limitation in reach, but climbs stairs only occasionally. Not qualified to work on ladders, scaffolds or ropes. They can balance, crouch, kneel, stoop or crawl, but only on occasion. No manipulation limits with hands or fingers. No visual limits with glasses. No communication limits. They would have to avoid concentrated exposure to hazards such as unprotected heights, fast or dangerous machines. They're afflicted with some pain and discomfort from a variety of sources that would produce mild to moderate chronic pain and discomfort noticeable at all times. However, with appropriate medication, they could be active at the limits I've described. Nonetheless, they would at all times have some mild limits on activities of daily living, mild up to moderate limits on social functioning, some moderate limits on concentration, persistence, and pace. They would generally be moderately limited in the ability to understand or remember

---

[2] Administrative Record at 50.

> details and the ability to carry out details, and the ability to
> maintain extended concentration. They would be mildly to
> moderately limited in the ability to interact with the general
> public and accepting structure or criticism from supervisors.
> Generally, moderately limited in the ability to respond to
> changes in their work setting or their work routine.

(Administrative Record at 51-52.) The vocational expert testified that under such limitations, Voss could perform the following unskilled light or sedentary work: (1) office helper (1,200 positions in Iowa and 112,000 positions in the nation), (2) photocopy machine operator (250 positions in Iowa and 32,000 positions in the nation), and (3) order clerk (2,000 positions in Iowa and 200,000 positions in the nation). The ALJ provided the vocational expert with an additional hypothetical question:

> Now, if I have the person down as sedentary, such they could
> not pick up more than 15 pounds on occasion, 10 pounds
> frequently, six-six hours out of an eight hour workday, stand
> and walk combined, about three [hours].

(Administrative Record at 54.) The vocational expert testified that under such limitations, Voss could perform the following work: (1) document procurer (1,300 positions in Iowa and 120,000 positions in the nation), (2) ticket counter (800 positions in Iowa and 72,000 positions in the nation), and (3) telephone quotation clerk (700 positions in Iowa and 75,000 positions in the nation). Lastly, the ALJ asked the vocational expert whether a hypothetical individual who was required to lie down for two hours in the afternoon, or required to take breaks every hour for 5 to 10 minutes, and miss up to four days of work per month, could find competitive employment. The vocational expert responded that such an individual could not find competitive employment.

### C. Voss' Medical History

On February 10, 2006, Voss met with Dr. Chris Lantz, M.D., complaining of back pain. Voss reported that his "pain has been progressing, and he has noted some weakness in the right lower extremity when he is up on his feet for quite some time."[3] Voss rated

---

[3] Administrative Record at 282.

his pain as 7 or 8 out of 10 on a scale of 1 to 10 with 10 being the most severe pain. Upon examination, Dr. Lantz diagnosed Voss with low back pain, and probable stenosis or disc disease versus arthritis. Dr. Lantz ordered an MRI for Voss in order to gather additional information.

On February 13, 2006, Voss underwent an MRI with Dr. Scott Truhlar, M.D. The MRI showed mild degenerative changes at L3-4 and L4-5. The MRI also showed mild broad-based posterior disc bulges at L4-5 and L5-S1. Dr. Truhlar opined that Voss had "[m]ild multilevel degenerative changes of the spine without evidence of definite cord or nerve root compression at any site."[4]

On April 21, 2006, Voss met with Dr. Brent A. Overton, M.D., for an evaluation of his back pain. Dr. Overton noted that:

> [Voss] has had a history of some low back pain, but over the last six months or so it has been steadily increasing. The pain is more to the right than to the left. It sometimes will radiate around to the right side of the hip. There is no numbness or tingling and no pain down into the legs. The pain increases with sitting too long, bending, standing or increased activity.

(Administrative Record at 402.) Upon examination and review of Voss' medical records, Dr. Overton diagnosed Voss with L4-5 and L5-S1 degenerative disc disease, right low back pain, and a small right L4-5 far lateral disc protrusion. Dr. Overton recommended conservative use of medication and physical therapy as treatment.

On September 11, 2006, Voss underwent a second MRI of his back. The MRI showed disc protrusions at T12-L1 and L5-S1. The MRI also showed a mild disc bulge at L4-5. Dr. Colin J. O'Brien, M.D., opined that Voss suffered from:

> Degenerative disk disease at T12-L1, L4-5, and L5-S1. The T-12-L1 level is unchanged, but the disk bulge and disk protrusion at L4-5 and L5-S1, respectively, have increased in size somewhat in the interim. There is mild narrowing of the right neural foramen at L5-S1, but no significant narrowing of the spinal canal at any level.

---

[4] *Id.* at 288.

(Administrative Record at 310.)

On November 10, 2006, Voss met with Dr. Sunny Kim, M.D., complaining of chronic low back pain.  Dr. Kim noted that:

> It appears that [Voss] has a history of chronic low back pain dating back up to 2 years ago.  He has had 3 epidural steroid injections without relief.  He has been through physical therapy many sessions without any relief. . . .  He rates the pain 7/10 at rest, 10/10 at worst, and 2/10 at best.  He states the pain wakes him up at night.  He has not been working due to this.  Activity has been limited. . . .  Pain is worse throughout the entire day.  It seems to be better with medication and rest.

(Administrative Record at 240.)  Upon examination, Dr. Kim diagnosed Voss with chronic low back pain with primary etiology being right sacroiliac joint pain with dysfunction. Additionally, Dr. Kim found no evidence of lumbosacral radiculopathy or myelopathic features.  Dr. Kim recommended physical therapy and medication as treatment.

On January 26, 2007, Voss met with Dr. Robert K. Yang, M.D., complaining of low back pain.  Dr. Yang noted that Voss stated his pain was "quite bothersome." Dr. Yang further noted that the pain has "limited [Voss'] ability to perform activities of daily living moderately."[5]  Voss rated his pain as 10 out of 10.  Voss told Dr. Yang that his pain has "prevented him from being gainfully employed."[6]  Voss indicated that he could only lift light objects and sit for one hour due to pain.  Voss also indicated that his pain created "extreme interference" with social activities.  Upon examination, Dr. Yang diagnosed Voss with chronic back pain.  Dr. Yang offered pain rehabilitation as an option for treatment.

On May 8, 2007, met with Dr. Christopher Welsh, M.D., for a diagnostic evaluation for anger issues, anxiety, and depressive symptoms.  Dr. Welsh found that Voss had the following depressive symptoms:  low mood, initial/middle insomnia, anhedonia,

---

[5] Administrative Record at 369.

[6] Administrative Record at 369.

feelings of guilt/worthlessness, low energy, concentration difficulties, decreased appetite, and recent suicidal ideation/passive death wish thoughts. Upon examination, Dr. Welsh diagnosed Voss with major depressive disorder, alcohol dependence in sustained remission, cocaine abuse in sustained full remission, marijuana abuse, anti-social personality disorder traits, and chronic low back pain. Dr. Welsh assessed a GAF score of 50. Dr. Welsh recommended medication and therapy as treatment.

On July 15, 2008, Voss underwent a third MRI of his back. The MRI showed mild broad-based disc bulges at T12-L1 and L5-S1. The MRI also showed a moderate to large foraminal/far lateral disc protrusion at L4-5. Dr. Shane Kraske, M.D., opined that:

> There is a moderate to large right lateralized disc protrusion at L4-5 which appears foraminal and extraforaminal far laterally, resulting in moderate to severe right sided foraminal narrowing as well as displacement of the right L4 nerve root far laterally.

(Administrative Record at 321.) Dr. Kraske recommended a nerve root injection of the right L4 nerve root as treatment.

On July 25, 2008, Voss also met with Dr. Overton, who diagnosed right L4-5 far lateral disc herniation. Dr. Overton recommended surgery as an option for treatment. On July 28, 2008, Voss underwent a right L4-5 far lateral microdiskectomy. In August 2008, Voss reported that overall, he was felling "a little bit better" following surgery. Voss stated that he continued to have pain down his leg if he sat for a long time. In October 2008, Voss reported an increase in his back pain. Dr. Overton noted that Voss' pain increases with sitting. Dr. Overton opined that:

> Obviously [Voss] had a long-term history of trouble with this nerve root prior to the herniation and then the surgery. . . . I think that he is at 12 weeks postop, kind of getting into the area of a lot of scarring that occurs around the nerve root. If we wait this may relent to some degree, however, given the chronic neuropathy in this nerve root prior to the surgery I think his prognosis should be very guarded.

(Administrative Record at 397.)

On December 8, 2008, Dr. Donald Shumate, D.O., reviewed Voss' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Voss. Dr. Shumate determined that Voss could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Shumate also determined that Voss could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Shumate found that Voss should avoid concentrated exposure to hazards such as machinery and heights. Dr. Shumate, however, found no manipulative, visual, or communicative limitations. Dr. Shumate concluded that:

> [Voss'] allegations of pain are supported by a long history of care for his back complaints and attempts to obtain relief with multiple modalities including [physical therapy], acupuncture, osteopathic manipulation, steroid epidural injections, and recent lumbar laminectomy but the credibility of severity of his pain is eroded by minimal objective findings. . . . His reported activities are inconsistent with the degree of pain and functional impairment alleged.

(Administrative Record at 444.)

On January 2, 2009, Dr. Scott Shafer, Ph.D., reviewed Voss' medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Voss. On the Psychiatric Review Technique assessment, Dr. Shafer diagnosed Voss with major depressive disorder, anti-social traits, alcohol, cannabis, and cocaine abuse in remission, and opioid dependence. Dr. Shafer determined that Voss had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Shafer determined that Voss was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal

workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. Dr. Shafer concluded that:

> [Medical evidence of record] indicates some improvement with treatment, but [Voss] has not followed through with recommended therapy. Attention span, concentration, and memory are intact. [Activities of daily living] indicate relatively few limitations based on a mental condition. [Voss] retains the ability to understand, remember, and follow basic instructions. His attention, concentration, and pace are adequate for tasks not requiring sustained attention. He can interact appropriately with the public, coworkers, and supervisors on at least a limited basis. His judgment is adequate to adjust to changes in the workplace with support.

(Administrative Record at 458.)

On February 25, 2009, Dr. James D. Wilson reviewed Voss' medical records and provided DDS with a physical RFC assessment for Voss. Dr. Wilson determined that Voss could: (1) occasionally lift and/or carry 10 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, but must periodically alternate sitting and standing to relieve pain or discomfort, and (5) push and/or pull without limitations. Dr. Wilson also determined that Voss could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson found that Voss should avoid concentrated exposure to hazards such as machinery and heights. Dr. Wilson, however, found no manipulative, visual, or communicative limitations. Dr. Wilson concluded that:

> [Voss] reports ongoing symptoms consistent with restrictions outlined herein. Credibility is eroded to some degree due to his history of narcotic pain medication addiction. Physical examination and [activities of daily living] from [Voss] do not support additional restrictions beyond those given. [Voss]

would be capable of making adjustments in the work place
every 2 hours.

(Administrative Record at 484.)

On March 31, 2009, Voss met with Dr. Welsh for a psychological evaluation. Voss' chief complaints were a lack of energy and feeling depressed. Voss rated his depression as 5-6 out 10 where 10 is the worst depression. Upon examination, Dr. Welsh diagnosed Voss with major depressive disorder, alcohol dependence in remission, cocaine dependence in remission, and marijuana abuse. Dr. Welsh assessed a GAF score of 59. Dr. Welsh recommended medication and therapy as treatment.

On June 16, 2009, Dr. Timothy Momany, Voss' primary care physician, filled out a "Pain-Physical Residual Functional Capacity Questionnaire" for Voss, provided to him by Voss' attorney. In the questionnaire, Dr. Momany diagnosed Voss with chronic back pain. Dr. Momany opined that Voss' prognosis was "guarded." Dr. Momany described Voss' symptoms as pain, depression, and frustration. In answer to whether Voss was a malingerer, Dr. Momany placed a "?" on the questionnaire. Dr. Momany indicated that Voss' depression contributed to Voss' symptoms and functional limitations. Dr. Momany opined that Voss' experience of pain was severe enough to interfere with Voss' attention and concentration on a constant basis during a typical eight-hour workday. Dr. Momany found that Voss could only sit or stand for 10 minutes at one time before needing to get up, sit down, or walk around. Dr. Momany further found that Voss could sit for less than two hours in an eight-hour workday, and stand/walk for less than two hours in an eight-hour workday. Dr. Momany also stated that Voss would need unscheduled work breaks on an hourly basis, and would need to lie down for 5 to 10 minutes on such breaks. Dr. Momany limited Voss to rarely lifting or carrying 10 pounds or less. Lastly, Dr. Momany estimated that Voss would miss more than four days per month due to his impairments or treatment for his impairments.

On March 1, 2010, at the request of Voss' attorney, Dr. Welsh filled out a "Mental Impairment Questionnaire" for Voss. Dr. Welsh diagnosed Voss with major depressive

disorder and chronic low back pain.  Dr. Welsh assessed a GAF score of 50-55, and indicated that Voss' highest GAF score in the past year had been 55.  Dr. Welsh described Voss' symptoms as depressed mood, hypersomnia, anhedonia, fatigue, and poor concentration.  Dr. Welsh believed Voss' prognosis was "fair."  Dr. Welsh offered no opinions with regard to Voss' functional limitations in relation to his mental impairments. Dr. Welsh stated that "I cannot specifically address the degree of limitation in these series of questions."[7]  Lastly, Dr. Welsh stated that Voss was not a malingerer.

## V.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined that Voss is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations.  *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citation omitted).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work."  *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3

---

[7] Administrative Record at 622.

(8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Voss had not engaged in substantial gainful activity since September 2, 2006. At the second step, the ALJ concluded from the medical evidence that Voss had the following severe impairments: lumbar degenerative disc disease, status post laminectomy, chronic lumbar pain syndrome, major depressive disorder, anti-social traits, alcohol, cannabis, and cocaine abuse in remission, and opioid dependence. At the third step, the ALJ found Voss did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Voss' RFC as follows:

> [Voss] has the residual functional capacity to perform sedentary work . . . such that he can lift and carry fifteen pounds occasionally, ten pounds frequently; sit for six hours in an eight hour workday; stand and walk combined about two to three hours in an eight hour workday; no limitation in the ability to reach; he can climb stairs occasionally; never climb ladders, ropes or scaffolds; occasionally balance, crouch, kneel, stoop, and crawl; no visual limitation with glasses; no communication or manipulation limits; he would need to avoid

concentrated exposure to hazards; he is afflicted with pain and discomfort from a variety of sources which causes mild to moderate chronic pain and discomfort noticeable at all times but with appropriate medications he would be active at the following: mild limitation in activities of daily living; mild to moderate limitation in social functioning; moderate limitation in concentration, persistence, or pain [sic]. [Voss] would have moderate limitations in the ability to understand, remember, and carry out details; moderate limitations in the ability to maintain extended concentration; mild to moderate limitations in the ability to interact with the general public and accept instruction or criticism from supervisors; and mild to moderate limitations in the ability to respond to changes in the work setting or work routine.

(Administrative Record at 17-18).  Also at the fourth step, the ALJ determined that Voss could not perform any of his past relevant work.  At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Voss could work at jobs that exist in significant numbers in the national economy.  Therefore, the ALJ concluded that Voss was not disabled.

### B. Objections Raised By Claimant

Voss argues that the ALJ erred in two respects.  First, Voss argues that the ALJ failed to properly evaluate the opinions of Dr. Momany, Voss' treating physician.  Second, Voss argues that the ALJ presented the vocational expert with a flawed hypothetical question which was not based on all the relevant evidence in the record.

### 1.   Dr. Momany's Opinions

Voss argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Momany.  Specifically, Voss argues that the ALJ's reasons for discounting Dr. Momany's opinions are not supported by substantial evidence in the record.  Voss concludes that this matter should be reversed and remanded to allow the ALJ to properly evaluate Dr. Momany's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v.*

*Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).  The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight.  A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).  If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2).  The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

Furthermore, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Momany as follows:

> Dr. Momany's opinions are simply not supported by the medical evidence of record nor his own treatment notes. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. Notably, clinical notes support such possibility; for example, one notation indicated that 'with trepidation,' Dr. Momany refilled [Voss'] narcotic medication; another notation made by Dr. Momany indicated [Voss] saw the neurosurgeon who 'was not very sympathetic' to [Voss'] cause; additionally, Dr. Momany noted that he felt comfortable that he and [Voss] had a 'very open physician patient relationship' . . . he understood [Voss] was looking at SSI and offered to complete any paperwork in that regard. Dr. Momany even indicated there was a lack of findings to support the need for narcotics for [Voss], but continued to provide narcotic prescriptions for [Voss]. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(Administrative Record at 22.)  In his decision, the ALJ also generally addressed Voss' multiple MRIs for his back, and thoroughly addressed the opinions of Drs. Shumate and Wilson, two non-examining consultative physicians.[8]

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618.  Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted).  Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).  While this is a close issue, the Court finds that the ALJ has not fully met these requirements.

First, the ALJ does not address or explain his reasons for rejecting the opinions of Dr. Momany.  The ALJ simply summarizes Dr. Momany's opinions from a "Pain-Physical Residual Functional Capacity Questionnaire" Dr. Momany filled out for Voss' attorney, and then makes conclusory observations that Momany's opinions are "are simply not supported by the medical evidence of record nor his own treatment notes."  The ALJ does not address, however, any medical evidence in the record, including Dr. Momany's own treatment notes, or what inconsistencies there are between Dr. Momany's opinions and his treatment notes and/or the overall medical evidence in the record.  Even a cursory review of the medical evidence demonstrates that Voss has dealt with low back problems since 2006.  It is consistently reported in medical documents that Voss' back pain is exacerbated by prolonged sitting or significant activity.[9]  Voss has been treated for low back pain with medication, physical therapy, pain rehabilitation, and surgery.  While this evidence in and of itself may not support a finding of disability, it is, at the very least, evidence which shows some consistency between the record and Dr. Momany's opinions.

---

[8] *See* Administrative Record at 18-21.

[9] *See* Administrative Record at 240, 369, 397, 402.

By failing to address even one instance where Dr. Momany's opinions are inconsistent with his treatment notes or the medical evidence as a whole, the ALJ has made it virtually impossible for the Court to make a determination of whether the ALJ's conclusion regarding Dr. Momany's opinions is supported by substantial evidence on the record. Second, the ALJ suggests that Dr. Momany's opinions cannot be trusted because Dr. Momany *may* have offered his opinions because he sympathized with Voss, and/or offered his opinions to avoid tension in his treating relationship with Voss.[10] The ALJ admits that it is "difficult to confirm the presence of such motives," and the Court finds that these speculative reasons do not constitute "good" reasons for disregarding Dr. Momany's opinions. Therefore, the Court finds that this matter should be remanded so that the ALJ may fully and fairly develop the record with regard to Dr. Momany's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Momany's opinions and support his reasons with evidence from the record.

### 2.   *Hypothetical Question*

Voss argues, among other things, that the ALJ's hypothetical question to the vocational expert failed to accurately describe his physical impairments, including consultative physician Dr. Wilson's determination that Voss needs to alternate between sitting and standing throughout the day. Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental

---

[10] The ALJ attempts to support his speculation regarding Dr. Momany's motives for his opinions by pointing out that Dr. Momany supplied Voss with narcotic medication even though he was concerned that Voss might have developed a dependency on the narcotic medication. Examples from the record show that once Dr. Momany became concerned that Voss had a narcotic drug dependency, he prescribed a small amount of narcotic medication for purposes of tapering Voss off of narcotic medication. *See* Administrative Record at 423; *see also id.* at 525 (In another treatment note, Dr. Momany stated that "I recognize the fact that he has done all that I have asked him to do and seen the various specialists. I asked him to agree to a trial of slowly tapering his need for narcotic [medication], initially 10% every other month. He agreed to do so and his wife also agreed to the plan of care. I wrote the prescription for the 1-month supply with 1 additional refill. I explained my intention which was to try to give him the best quality care and part of doing so was an intermittent attempt to reduce his narcotic requirement.").

impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)."). In section *V.B.1* of this decision, the Court remanded this matter for further consideration of Dr. Momany's opinions, including Dr. Momany's opinions regarding Voss' physical impairments. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Voss' limitations based on the medical evidence as a whole, including the opinions of Dr. Momany and Dr. Wilson's opinion with regard to Voss' need to alternate sitting and standing throughout the day. *See Hunt*, 250 F.3d at 625.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper

where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to the opinions of Dr. Momany, and provide the vocational expert with a hypothetical question that captured the concrete consequences of Voss' limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## *VI.  CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must provide clear reasons for accepting or rejecting Dr. Momany's opinions and support his reasons with evidence from the record. The ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Voss' limitations based on the medical evidence as a whole.

## *VII.  ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this __18th__ day of June, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA